SYLVIA LANG, Plaintiff, *v.* JOEL RESIBERG, Defendant.

Supreme Court, Special Term, Kings County, March 14, 1946.

*Samuel Silverman* for plaintiff.

*Jack Kalman* for defendant.

CUFF, J. This is a proceeding to declare (1) of no force and effect a lease entered into by the parties herein because of mutual repudiation thereof, and (2) that defendant has no estate in the demised premises.

The facts are: Under a written lease dated January 19, 1943, the then owner leased to defendant premises 5002–12th Avenue, Brooklyn, N. Y., to be occupied as a drugstore for the period April 1, 1943, to March 31, 1945, at the yearly rental of $780. On December 4, 1944, plaintiff, who had recently become the owner of the premises, and defendant agreed in writing to surrender their respective rights under the unexpired first lease and simultaneously made a second written lease covering the same premises for a ten-year term commencing January 1, 1945, at rentals graduated upward beginning with $1,320 per year. Four provisions which were not in the first lease, for the defendant-tenant's benefit were incorporated into this second lease as follows: (1) in addition to a drugstore defendant was allowed to conduct a luncheonette, (2) defendant's tenancy of drugstore and luncheonette was to be exclusive in the building (wherein there was another store) of which defendant's leased store was a part, (3) plaintiff was to substantially alter and improve the leased premises (I find as a fact that plaintiff performed this promise at a cost of approximately $1,000) and (4) defendant was allowed to seal off the dumb-waiter shaft, install hot water lines to fountain and erect partitions in the basement of the building.

As has been said that lease was executed by plaintiff and defendant on December 4, 1944. The State Legislature which convened on January 1, 1945, enacted (March 28, 1945) what is known as the " Business Rent Law " (L. 1945, ch. 314). By that law all store rents were " frozen " as of June 1, 1944, when defendant's rent was $780 a year.

The question presented by this trial is the applicability of the Business Rent Law to that ten-year lease.

Plaintiff has been compelled to seek relief because defendant has refused to pay the rent reserved under the lease. (I make the finding of fact that defendant refused to pay the rent provided in the second lease because he was of the opinion that the Business Rent Law applied to his situation.) Under the said rent law a landlord is not allowed to receive as rent more than the amount of the rent reserved in any lease or agreement on June 1, 1944, plus 15% thereof. The rent reserved in the second lease exceeds that amount. Defendant, because plaintiff sought the new rent, paid no rent at all for June, July and August, 1945.

The fact is that the premises occupied by defendant under the second lease are different from what they were under the first lease on June 1, 1944. Likewise defendant was granted greater rights under that second lease. There was no coercion; no subterfuge. The terms of the second lease were discussed and the lease executed long before the new rent laws were under consideration. It is the retroactive feature of the new legislation which has caused this dispute.

It is my conclusion that the Business Rent Law has application to this situation.

While it is true that words implying alteration of premises or additional rights to tenants are not to be found in the statute, under the definition of " Emergency rent " (§ 2, subd. [c]), provision is made that " if the business space [rented] was not used or occupied as business space on such date [June 1, 1944] the emergency rent shall be the reasonable rent therefor as business space on such date, plus fifteen per centum thereof, to be fixed by agreement, by arbitration, or by the supreme court upon the basis of the rent charged on such date for the most nearly comparable business space in the building or other satisfactory evidence." That language clearly covers the relationship of landlord and tenant where the demised premises consist of a new building or an addition erected since June 1, 1944. But the provision is broader. It was intended to cover all leaseholds where changes had been made. It refers to " business space ". That means space in which the tenant may do business. The lease herein required the landlord to make alterations which improved the use of the store for the business of the tenant. Those alterations provided " business space * * * not used or occupied " before June 1, 1944, as space in which this tenant could carry on his business.

The additional right of conducting a luncheonette falls into the same category. As a matter of fact, I find that some of the new work and installations provided the " business space " which was necessary in order that defendant could exercise his right of expansion of his use of the premises as provided in the second lease. " Business space " includes a right to additional or greater use of the rented property.

Any other interpretation of the statute would tend to frustrate the avowed intention of the State in endeavoring to cope with a condition of business space shortage which neither the owners of property, the tenants nor the State created. Unless reason and forbearance within the law are applied, chaos in the renting business will result with the much dreaded inflation invited to

enter and do its worst. The courts should read the Business Rent Law to include, not to exclude, situations arising in the field of hiring business space.

Relief for this situation is provided by the statute. Pursuant to its terms the landlord and tenant may agree (now, as distinguished from a time before the enactment of the law on March 28, 1945) as to the reasonable value of the altered and improved premises; they may agree to have the rent fixed by an arbitrator or failing in either of those agreements they may petition the Supreme Court for a fixation of the rents. (L. 1945, ch. 314, § 2, subd. [c].)

With respect to defendant's counterclaim, his remedy was to proceed under the Business Rent Law as indicated.

Judgment dismissing the complaint and counterclaim will be entered, without costs.